IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KENNETH R. BRO, JR., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No 04-0638-CV-W-HFS |
| ) | |
| FORD MOTOR COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the court is the motion for summary judgment of defendants Ford Motor Company, Ford Motor Company of Delaware, Ford Motor Company d/b/a Ford Motor Assembly Plant, Ford Motor Company of Delaware d/b/a Ford Motor Assembly Plant (collectively referred to as "Ford"), and Steve Kinder[1]. The complaint in this action was filed by plaintiffs, Kenneth R. Bro, and Linda Bro; Mr. Bro alleged negligence, and Mrs. Bro asserted a claim for loss of consortium. The basic dispute in this action lies in various theories asserted under premises liability. For the reasons noted herein, the motion will be granted.

**Background Facts**

The parties do not dispute the fundamental facts, but where, controverted, it will be duly noted. On June 7, 1999, Mr. Bro was injured while working on a demolition project at a site owned

---

[1] While the court's record indicates Mr. Kinder's participation in the discovery process in this action, he has not filed a dispositive motion.

and operated by defendant Ford at U.S.Highway 69 in Claycomo, Clay County, Missouri 64119. At the time of the injury, Mr. Bro was employed by A.T. Industrial Sheet Metal, Inc. ("ATI"), and defendant Kinder was also employed by ATI as a lead man.

Prior to the date of the occurrence, Ford began demolition work on the E-Coat Facility located at Claycomo. As part of the demolition project, Ford removed the lower portion of a ladder which was attached to a platform or catwalk. Ford then employed ATI to perform certain work which included detaching and removing the remaining upper portion of the ladder from the overhead catwalk. The upper catwalk was approximately 26 feet off the floor, and the ladder extended down from the catwalk approximately 6 to 8 feet.

ATI arranged to have a crane available to assist Mr. Bro in this endeavor. However, Mr. Bro determined that there was insufficient room for the crane boom to be maneuvered to extend above the catwalk in order to attach the harness to the ladder from above, rather than from below the ladder. Mr. Bro suggested that a rope be tied to the ladder, which could then be cut from the catwalk and let down. According to Mr. Bro, Kinder refused his suggestion and demanded that he use the crane which required him to climb onto the ladder. The fasteners securing the ladder to the overhead catwalk gave way, and both the ladder and Mr. Bro fell to the floor.

In his complaint, Mr. Bro claims that Ford knew or by using ordinary care, should have known that the ladder was not securely attached to the overhead catwalk, and that it failed to use ordinary care to make the ladder reasonably safe by either removing the ladder completely, or by securing the fasteners, or warning against the danger of mounting it. Mr. Bro further claims that Kinder owed him a personal duty of care and breached his personal common law duty when he demanded that Mr. Bro hook the ladder to the crane. Mr. Bro claims that Kinder was not acting
2

within a supervisory role, but, rather, as a co-employee, and, therefore, is not shielded from personal liability.

**Standard of Review for Summary Judgment**

Summary judgment is proper if the moving party demonstrates it is entitled to judgment as a matter of law. Callahan v. Alumax Foils, Inc., 973 S.W.2d 488, 489 (Mo.App. E.D. 1998). The movant meets its prima facie burden for summary judgment if it demonstrates, by reference to pleadings, discovery or affidavits, that there is no genuine issue as to any material fact so that it is entitled to judgment as a matter of law. Callahan, at 490$^2$. Once the moving party has met its prima facie burden, the non-moving party must proffer evidence outside its pleadings that creates a genuine issue of material fact. Id. The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. Bowles v. Weld Tire & Wheel, Inc., 41 S.W. 3d at 22.

**Analysis**

The law is well settled in Missouri that a landowner is not vicariously liable for injuries caused by the negligence of an independent contractor or his or her employees to innocent third parties or employees of the independent contractor. Lawrence v. Bainbridge Apartments, 957 S.W.2d 400, 403-04 (Mo.App. W.D. 1997); citing, Zueck v. Oppenheimer Gateway Properties, 809

---

$^2$Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. Bowles v. Weld Tire & Wheel, Inc., 41 S.W.3d 18, 22 (Mo.App. W.D. 2001).

3

S.W.2d 384 (Mo.banc 1991). One exception to this rule was the "inherently dangerous activity exception" which provided that a landowner would be liable for injuries to third parties or employees of independent contractors who were not covered by workers' compensation for failure to take precautions to prevent an injury caused by an inherently dangerous activity performed on his land[3]. Lawrence, at 404. In 1991, the court in Zueck, abolished the inherently dangerous exception to premises liability when the injured employee is covered by workers' compensation[4]. Lawrence, 957 S.W.2d at 404; see also, Logan v. Sho-Me Power Elec. Co-Op, 122 S.W.3d 670, 674 (Mo.App. S.D. 2003).

A second exception to liability, "the landowner control exception," provided that the landowner would be liable if he exerted substantial control over the premises and the manner in which the work was done by the independent contractor. Lawrence v. Bainbridge Apartments, 957 S.W.2d at 404; see also, Callahan v. Alumax Foils, Inc., 973 S.W.2d at 491[3] (under Missouri's version of the control test, the plaintiff must show that the landowner was controlling both the job site and the activities of the contractor).

---

[3]Originally, the inherently dangerous activity exception applied only to injured innocent third parties, but the exception was subsequently extended to employees of independent contractors. Lawrence v. Bainbridge Apartments, 957 S.W.2d at 404. The rationale for extending the exception and imposing liability on landowners for injuries to employees of independent contractors was to place the employee on the same footing as innocent third parties because neither had a contractual relation with the landowner, and thus no voice or bargaining power. Lawrence, at 404.

[4]Thus, unless the landowner relinquishes possession and control of the premises to an independent contractor during construction, it will not be held liable for injuries to employees of the independent contractor regardless of whether or not the employee was engaged in an inherently dangerous activity, and regardless of whether the liability sought to be imposed is vicarious or direct. Horner v. Hammons, 916 S.W.2d 810, 814 (Mo.App. W.D. 1995).

4

Initially, it is noted that neither party disputes that plaintiff was entitled to, and, indeed, received workers' compensation for the injuries sustained. However, Ford contends that it is not liable because it relinquished possession and control of the premises to ATI. In support of this argument, Ford points to plaintiff's deposition in which he testified that he did not have contact with any one at Ford, either prior to, or during his participation with the demolition project. (Ford Exh. D; pg. 95). Plaintiff also testified that he did not receive instructions from Ford regarding his performance on the demolition project. (Id.; pg. 96). This was corroborated by the deposition testimony of co-workers Marc White (Ford, Exh. E; pg. 90), Johnny P. Weishaar (Ford Exh. G; pg. 34), Douglas E. Attebery (Ford Exh. H; pg. 24, 38). Additionally, the owner of ATI, Sam Thomas Curiale, testified that Ford did not have a supervisory role over the work performed by ATI on the demolition project. (Ford Exh. I; pg. 71).

On the other hand, plaintiffs argue that the initial demolition work performed by Ford is illustrative of its control over the details of the manner in which the work was done. In support of this argument, plaintiffs cite Schumaker v. Barker, 948 S.W.2d 166 (Mo.App. 1997), for the proposition that the landowner control exception is not applicable where the landowner was present on the job site, and performed minor cleanup. Plaintiffs also look to Lawrence v. Bainbridge Apartments, 919 S.W.2d 566 (Mo.App. 1996), to support their argument that landowner control is demonstrated where it controls the independent contractor's access to the facility.

Contrary to plaintiffs' contentions, the court in Lawrence actually found that allowing the independent contractor to enter the premises was insufficient to hold the landowner liable on a premises liability theory. Furthermore, unlike the facts of Schumaker, plaintiffs fail to assert, and there is no evidence that Ford maintained a presence at the job site or engaged in cleaning up during

5

the demolition performed by ATI. Similarly, plaintiffs misread Horner v. Hammons, 916 S.W.2d 810 (Mo.App. W.D. 1995), to hold that liability attaches to a landowner who occasionally visits the work site and retains the right to ensure compliance with contract specifications. In fact, the Horner court actually found that occasional visits to the construction site did not impose liability on the landowner, and the degree of control must go beyond merely securing compliance with contracts.

In sum, Ford has met its prima facie case for summary judgment by demonstrating, through depositions, that there was no genuine issue of fact as to whether it controlled ATI's activities. Plaintiffs, however, failed to produce evidence that created a genuine issue of fact as to whether Ford controlled its activities.

Nonetheless, Ford also argues that in the event it is found to have retained control over the job site and ATI's activities, it still escapes liability because the condition of the ladder was "open and obvious" as a matter of law. In many instances, a landowner is liable to an invitee who has been injured by a condition on the land if, *inter alia*, the landowner should expect that the invitee will not discover or realize the danger. Huxoll v. McAlister's Body & Frame, Inc., 129 S.W.3d 33, 35 (Mo.App. W.D. 2004). In other words, a landowner has no duty to protect invitees from dangers that are open and obvious as a matter of law[4]. Huxoll, at 35. Here, plaintiffs counter, quite correctly, that, as testified by Mr. Bro's co-worker, Marc White, the ladder appeared to be in good condition. (Ford Exh. F; Marc White; pg. 58, 72). Mr. Bro's supervisor, Steve Kinder, also testified that "the ladder should not have given." (Plaintiffs' Exh. A; Steve Kinder; pg. 78).

---

[4] An exception exists however, if the landowner should have anticipated the harm despite the obviousness of the risk. Huxoll, 129 S.W.3d at 35.

6

Nevertheless, as previously noted, a landowner who, as here, relinquishes control of the premises to an independent contractor is not liable for injuries sustained by employees of the independent contractor covered by workers' compensation[5]. Horner v. Hammons, 916 S.W.2d at 814. Instead, the duty to use reasonable and ordinary care to prevent injury shifts to the independent contractor. Horner, at 814. Thus, plaintiffs' argument fails to make a submissible case on this theory, and the cases cited by the parties regarding theories of assumption of risk are equally inapposite. See, Bennett v. Hidden Valley Golf and Ski, Inc., 318 F.3d 868 (8th Cir. 2003); Lewis v. Snow Creek, Inc., 6 S.W.3d 388 (Mo.App. W.D. 1999); Sheppard v. Midway R-1 School District, 904 S.W.2d 257 (Mo.App. W.D. 1995)[6].

Inasmuch as Mr. Bro fails to demonstrate the existence of a material fact sufficient to be put before the trier of fact, his claims alleging negligence against Ford are dismissed. It follows, therefore, that Mrs. Bro's derivative claim of loss of consortium must also be dismissed.

Accordingly, it is hereby

ORDERED that the motion for summary judgment (ECF doc. 51) is GRANTED. The clerk is directed to enter judgment in favor of defendants Ford Motor Company, Ford Motor Company

---

[5] This is the rule regardless of whether or not the employee was engaged in an inherently dangerous activity, and regardless of whether the liability sought to be imposed is vicarious or direct. Horner v. Hammons, 916 S.W.2d at 814.

[6] The plaintiff in Lewis, was a customer who sustained injuries from a fall after renting skis from defendant. Similarly, the plaintiff in Bennett, was a skier who alleged negligence after she was injured while skiing at defendant's ski resort. The plaintiff in Sheppard, was a long jump competitor in a junior high school track meet who brought suit against the defendant school district.

of Delaware, Ford Motor Company d/b/a Ford Motor Assembly Plant, and Ford Motor Company of Delaware d/b/a Ford Motor Assembly Plant[7].

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

November 29, 2005

Kansas City, Missouri

---

[7]The case will continue as to plaintiffs' remaining claims against defendant Kinder.